# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MYRON TERESHCHUK** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil No. 09-1911 (RCL)** |
| | ) | |
| **BUREAU OF PRISONS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This case concerns whether defendant, the Bureau of Prisons ("BOP"), has sufficiently responded to plaintiff Myron Tereshchuk's Freedom of Information Act ("FOIA") request. Although the parties have resolved many of the issues between them, defendant continues to withhold many of the records sought. As a result, plaintiff asserts claims under FOIA, the Administrative Procedures Act ("APA"), and the United States Constitution, seeking injunctive and declaratory relief and asking the Court to order disclosure of the records sought.

Before the Court is defendant BOP's Motion for Summary Judgment, May 2, 2014, ECF No. 92. Upon consideration of the defendant's motion, the plaintiff's Opposition, June 13, 2014, ECF No. 95, the defendant's Reply thereto, July 16, 2014, ECF No. 98, the record herein, and applicable law, the Court GRANTS defendant's motion for summary judgment.

## I.    BACKGROUND

On August 10, 2009, Mr. Tereshchuk submitted a FOIA request seeking access to "all of the Administrative Remedy Indexes and Responses of the Central Office, all of the Administrative Remedy Indexes and Responses for all Regional Offices, and all of the

1

Administrative Remedy Indexes and Responses for each and every institution under the control of the Federal Bureau of Prisons." Compl. ¶ 2 (emphasis in original). In a telephone conversation with the BOP's counsel on July 23, 2013, Mr. Tereshchuk agreed to limit his request to documents originating after the year 2000. Def.'s Statement of Fact ¶ 2. In early 2014, the BOP sent Mr. Tereshchuk CDs containing all of the administrative remedy indexes sought, with inmate names and register numbers redacted. *Id.* ¶ 3.

## A. The Administrative Remedy Program

The Administrative Remedy Program (ARP) allows inmates to seek formal review of any issue relating to any aspect of their confinement. 28 C.F.R. § 542.10(a). Generally, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *Id.* § 542.13(a). If an inmate is unsatisfied by any informal resolution, he may submit a formal written administrative remedy request. *Id.* § 542.14(a). If still unsatisfied by the warden's response, the inmate "may submit an [a]ppeal to the Regional Director," and then further to the General Counsel at the BOP's Central Office. *Id.* § 542.15(a). Such responses "may grant or deny the inmate's request, or the BOP may provide an informational response addressing the inmate's concern." Albright Decl. ¶ 4. Such requests and appeals must be available to inmates and the public, with indexes available through the BOP Central Office. *Id.* § 542.19. To access responses, a requester must "identif[y] by Remedy ID number as indicated on an index" the response sought. *Id.* Responses are provided after inmate names and register numbers have been removed. *Id.*

## B. Plaintiff's Request

Although the BOP has provided digital copies of all indexes requested, Mr. Tereshchuk now argues that "the indexes are so heavily redacted as to be rendered useless." Opp'n 1. He thus seeks more detailed indexes.

Further, he continues to seek all administrative remedy responses from each institution under the control of the BOP. Compl. ¶ 6. Mr. Tereshchuk requests ARP responses in order to examine the BOP's treatment of prisoners. Compl. ¶¶ 34, 40, 43. He believes the records will expose patterns of unequal treatment among prisoners, lack of uniform policy, and corruption. Opp'n 4.

Finally, Mr. Tereshchuk argues the responses are the result of adversarial proceedings and thus should be contained in reading rooms pursuant to § 552(a)(2). Opp'n 2-4.

He asserts claims under FOIA, 5 U.S.C. § 552; the APA, 5 U.S.C. § 700 et. seq.; and the United States Constitution. Compl. ¶¶ 2, 6, 20-21; Supp. Compl., ¶¶ 2, 6, 16-19.

## II.    LEGAL STANDARD

### A. Standard of Review

Summary judgment should be granted when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)-(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## B. FOIA

A district court has jurisdiction over a FOIA action if an agency has improperly withheld agency records. *See* 5 U.S.C. § 552(a)(4)(B). FOIA cases are typically and appropriately decided by summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. " *Fischer v. DOJ*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)); *see also Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994); *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The Court may award summary judgment solely on the information provided in an agency's affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

FOIA establishes "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) (citing S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). *See also Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (noting a "strong presumption in favor of disclosure"). This ensures an open government and is necessary because FOIA requesters face an information asymmetry since the agency possesses the requested information and decides whether or not it is disclosed. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145-46 (D.C. Cir. 2006). As such, the

4

agency bears the burden in litigation to justify withholding any records. 5 U.S.C. § 552(a)(4). *Pub. Citizen Health Research Grp. v. FDA*, 185 F.2d 1023, 1027 (D.C. Cir. 1978).

### C. The APA

When the APA is properly invoked, a court determines whether the challenged agency decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See* 5 U.S.C. § 706. A motion for summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006). However, the APA provides for judicial review of agency action only where "there is no other adequate remedy in a court." 5 U.S.C. § 704; *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1531 (D.C. Cir. 1983).

### III.    DISCUSSION

#### A. Indexes

Mr. Tereshchuk requested access to all administrative indexes under the BOP's control. Supp. Compl. ¶ 2. In response, the BOP provided him with an electronic copy of all indexes for each level of the BOP for the time period between January 1, 2000 and December 31, 2013. ECF No. 68 at 1; Albright Decl. ¶ 10. However, he now argues that the indexes provided are "so heavily redacted as to be rendered useless" because the names and registration numbers of federal prisoners are redacted and "the title headings of the indexed proceedings are stated in very broad terms." Opp'n 1.

#### *1. Withholding inmate names and register numbers*[1]

---

[1] The BOP also argues that inmates' personal information may be withheld pursuant to Exemption 7(C), which provides for the withholding of information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It is not as clear as the BOP asserts that all records at issue were collected for law enforcement purposes. Def.'s Reply in Support of Mot.

The BOP redacted inmate names and register numbers pursuant to its own regulations forbidding disclosure of inmate names and register numbers. 28 C.F.R. § 542.19. Such redactions are appropriate under FOIA Exemption 6. Exemption 6 is meant to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information. *US Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

Exemption 6 provides that an agency shall not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" is interpreted broadly and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Washington Post Co.*, 456 U.S. at 599, 602. And Exemption 6 exempts not just files, but also personal information such as names and addresses where release would "create[] a palpable threat to privacy." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). The records requested are BOP records on individual inmates and includes identifiable information such as name and register number; thus, the responses are files pursuant to Exemption 6.

The Court must balance the public's right to disclosure against the individual's right to privacy. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976). FOIA demands disclosure if no significant privacy interest is implicated (and if no other exemption applies). *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). "If, on the other hand, a substantial privacy interest is at stake, then we must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Id; see also Washington Post*, 456 U.S. at 599, *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

Summ. J. 3. However, because the redactions at issue were proper under Exemption 6, the Court need not consider this issue.

The initial inquiry is whether disclosure of the records at issue would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). The information need not be intimate or embarrassing. *Washington Post Co.*, 456 U.S. at 600. For example, the Supreme Court has found a privacy interest in information "such as place of birth, date of birth, date of marriage, employment history, and comparable data, *Washington Post Co.*, 456 U.S. at 600.

The information contained in the administrative responses is highly personal. The requests and responses describe the daily lives of inmates in intimate detail. For example, responses provided to the Court provide records of bladder infections, liver disease, and genital warts. ECF No. 95 at 9, 11, 18. Responses also provide information about an inmate's daily life, including food preferences, *id.* at 13, and bedding preferences, *id.* at 8, 20. As this information is highly personal, especially in comparison to the types of information generally privileged by Exemption 6, inmates have a privacy interest in the content of their requests and responses.

The Court next considers the public interest in its disclosure. The burden of establishing that disclosure would serve the public interest is on the requester. *See FOIA Update*, Vol. X, No. 2, at 7. Only information that will "shed light on an agency's performance of its statutory duties" is relevant to the public interest. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Information that does not directly reveal the federal government's activities is irrelevant. *Id.* at 775. A requester's particular purpose has no bearing on the public interest. *Id.* at 771-72. Therefore, to the extent that Mr. Tereshchuk requests the information to challenge the loss of his own good time, he has not established a public interest. *Cole v. DOJ*, No. 04-5329, 2005 U.S. App. LEXIS 7358, at *2-3 (D.C. Cir. Apr. 27, 2005).

However, he also asserts that the records will expose patterns of unequal treatment among prisoners, lack of uniform policy, and corruption. Opp'n 4. A showing of public interest

7

requires "more than a bare suspicion" of official misconduct; "[r]ather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Barbosa v. Drug Enforcement Admin.*, 541 F. Supp. 2d 108, 111 (D.D.C. 2008) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174). Only then "will there be a counterweight on the FOIA scale for a court to balance against the cognizable privacy interests in the requested documents." *Favish*, 541 U.S. at 174-75. If mere allegations were enough to override a personal privacy interest, that privacy interest would be worthless. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). Thus, the requester must provide evidence that would warrant a belief by a reasonable person that the alleged government misconduct might have occurred. *Favish*, 541 U.S. at 174.

Because Mr. Tereshchuk has not provided any evidence of misconduct—or really even alleged any specific kind of misconduct other than potential favoritism—there is little public interest in the release of this personal information. Inmates' privacy interest in withholding their personal information easily outweighs the lack of public interest, and as such, the BOP was correct to redact identifying information. *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) (finding that "something, even a modest privacy interest, outweighs nothing every time").

### 2. *Specificity of indexes*

Although Mr. Tereshchuk argues that the indexes he was provided are inadequate because "the title headings of the indexed proceedings are stated in very broad terms," Opp'n at 1, the BOP has fulfilled its obligation to provide an index. The BOP provided the indexes as they are maintained by the agency. Albright Decl. ¶ 8. "It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." *Yeager v. Drug*

*Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975)). "A requester is entitled only to records that an agency has in fact chosen to create and retain. Thus, although an agency is entitled to possess a record, it need not obtain or regain possession of a record in order to satisfy a FOIA request." *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982). "A Freedom of Information Act (FOIA) request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 271 (D.D.C. 2012). That is essentially what Mr. Tereshchuk seeks: an index that provides a more detailed summary of the underlying contents. The BOP has no duty to create such a record.

The BOP provided the indexes as they are maintained by the agency, with only prisoners names and identifying numbers redacted, as required by BOP regulations as well as FOIA Exception 6. Mr. Tereshchuk got all parts of the indexes to which he has a legal right, and he has no right to require defendant to create a new index. Therefore, the court grants defendant's motion for summary judgment regarding the indexes.

### B. Administrative Remedy Responses

FOIA requires the disclosure of requested "agency records," including "[a]ny reasonably segregable portion of a record," absent a demonstration by the government that the materials fall within one of nine exemptions. 5 U.S.C. § 552(a)(3)-(b); *see also Am. Fed'n of Gov't Employees, Local 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 153 (D.D.C. 2010); *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 128 (D.C. Cir. 2005). Additionally, BOP regulations state that anyone may inspect ARP responses identified by index number at each institution, regional

office, or central office. 28 C.F.R. 542.19. Alternatively, the responses may be purchased in accordance with the regular fees established for copies furnished under FOIA. *Id.* Mr. Tereshchuk requests all responses from the central office, regional offices, and individual institutions. Compl. ¶ 2.

## *1. Claims under the APA and the Constitution*

Mr. Tereshchuk filed suit under the APA and the Constitution challenging the manner in which he was granted access to the ARP records. As noted above, the APA provides for judicial review of agency action only where there is no other adequate remedy in a court. Generally, APA review is not available for FOIA claims because FOIA provides an adequate remedy. *Thomas v. Fed. Aviation Admin.*, 05-cv-2391, 2007 WL 219988 at *3 (D.D.C. Jan. 25, 2007); *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005). "This is because the FOIA grants federal courts jurisdiction to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 264 (citing 5 U.S.C. § 552(a)(4)(B)). Where a plaintiff alleges that an agency has wrongfully withheld agency records in response to a FOIA request, an APA claim seeking compelled disclosure is precluded because FOIA provides a remedy. *Kenney v. DOJ*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009). Because Mr. Tereschuk alleges exactly that in this case, he cannot assert claims under the APA.

Mr. Tereshchuk also makes various allusions to constitutional claims, although he generally fails to explain how his constitutional rights have been violated. Because the complaints and pleadings of pro se parties are to be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court does consider whether Mr. Tereshchuk has presented any constitutional claims, particularly with respect to his due process claims.

Mr. Tereshchuk makes a passing reference to the denial of his "First Amendment right to redress of grievances," Opp'n at 3, and comments that this Court has jurisdiction under the First and Sixth Amendments, Supp. Compl. ¶ 2. However, he has failed to describe any claims under these Amendments and it is not clear to this Court what he might have referred to.

Mr. Tereshchuk also mentions that without the requested records, he would be unable to defend himself against charges that he violated prison rules that resulted in the revocation of his acquired "good time." Compl. ¶ 30. He claims he has thus suffered a substantial loss of due process rights. *Id.* Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Mr. Tereshchuk has not alleged any facts that would enable the Court to determine whether a due process violation occurred when his good time was taken away.

And "[t]o the extent that plaintiff's complaint . . . may be read as seeking relief from any defendant for an alleged violation of constitutional rights for failure to comply with the FOIA . . . it fails." *Harrison v. Lappin*, 04-cv-0061, 2005 WL 752186, *3 (D.D.C. Mar. 31, 2005). FOIA is a comprehensive statutory scheme to resolve all issues associated with the release of government documents. *Id.* (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002). Unlike a "constitutionally compelled disclosure to a single party" during discovery in criminal litigation, *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999), a FOIA disclosure is released to the public at large. *See Clay v. DOJ*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (rejecting FOIA requester's due process argument "because the FOIA is not a substitute

for discovery rules which govern civil and criminal litigation where 'different considerations' are at issue") (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009)).

Because Mr. Tereshchuk cannot bring claims under the APA or the Constitution in this case, this Court analyzes the BOP's responsibilities under the BOP's regulations and FOIA.

### 2. Compliance with BOP regulations

The BOP argues that Mr. Tereshchuk's case should be dismissed because he failed to comply with BOP regulations when submitting his request. Def.'s Reply in Supp. of Mot. Summ. J. 8. A party requesting agency records under the FOIA must comply with the procedures set forth in the agency's regulations. *Lardner v. FBI*, 852 F. Supp. 2d 127, 135 (D.D.C. 2012). If the requester fails to comply with the regulations, his FOIA claim is subject to dismissal for failure to exhaust administrative remedies. *Id.* Furthermore, an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation. *Markwest Mich. Pipeline Co., LLC v. FERC*, 646 F.3d 30 (D.C. Cir. 2011).

BOP regulation 28 C.F.R. § 542.19 requires that responses sought "must be identified by Remedy ID number as indicated on an index." This regulation directly applies to Mr. Tereshchuk. Nonetheless, Mr. Tereshchuk has failed to identify the records he seeks by number. Instead of identifying the responses sought by number, Mr. Tereshchuk requested "all" administrative remedy responses. *See* Compl. ¶ 2. As such, he has failed to comply with the agency's procedures and his claim will be dismissed. However, the BOP conceded during oral argument that if Mr. Tereshchuk should later request these same responses by their Index numbers, the BOP would be obligated to provide him access.

### 3. Burdensomeness of request

12

Despite the BOP's statement before the Court that it would produce any records requested by Index number, it argues in its summary judgment motion that a request pertaining to "all" responses would be unreasonably burdensome. Mot. Summ. J. 9-10. FOIA requires requesters to reasonably describe the records sought. 5 U.S.C. § 552(a)(3)(A). A request is sufficient "if it enable[s] a professional employee of the agency who [i]s familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Forsham v. Califano*, 587 F.2d 1128, 1141 (D.C. Cir. 1978) *aff'd sub nom. Forsham v. Harris*, 445 U.S. 169 (1980) (quoting H.R. Rep. No. 876, 93d Cong., 2d Sess. 5-6 (1974)). "The linchpin inquiry is whether 'the agency is able to determine precisely what records are being requested.'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (quoting S. Rep. No. 854, 93d Cong., 2d Sess. 10 (1974)).

"Broad, sweeping requests lacking specificity are not sufficient." *Dale v. IRS*, 238 F. Supp. 2d 99, 104. This is because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000). Mr. Tereshchuk correctly points out that almost the entire body of case law to discuss overbreadth refers to an agency's obligation to <u>search</u> for potentially relevant records, rather than to <u>disclose</u> those already located. Opp'n 2. *See, e.g.*, *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978) (finding unreasonably burdensome a request for additional responsive records where "if they exist, could be found only through a page-by-page search through [] 84,000 cubic feet of documents") (internal quotation marks omitted); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (finding unreasonably burdensome a request to "look for just about everything [the agencies] have regarding, among other things, Iran, China, Venezuela, Russia, sanctions, waivers, and communications between the Secretary of State, the Secretary of the Treasury, and the President"); *Pub. Citizen, Inc. v. Dep't of Educ.*,

13

292 F. Supp. 2d 1, 6-7 (D.D.C.2003) (finding reasonable a search of 25,000 files for data irregularly kept in the agency's database when the search was "certain to turn up responsive documents").

Here, the BOP is not asked to search for records, which FOIA defines as the "review . . . [of] agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). Instead, Mr. Tereshchuk seeks all records already identified in the indexes provided to him. In fact, the BOP has estimated the exact number of pages of records it would have to produce. Stroble Decl. ¶ 6. However, the BOP argues that the mere production of records that have technically been identified can be unreasonably burdensome. *See Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 205 (D.C. Cir. 1990) (denying as overbroad a request for "every chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office"); *Irons v. Schuyler*, 465 F.2d 608, 613 (D.C. Cir. 1972) (denying request for 3.5 million unpublished manuscripts spanning 100 years because "the contours of the records thus described are so broad" they are not reasonably identified).

This Court is skeptical that a FOIA request may be denied based on sheer volume of records requested. As already mentioned, the dominant objective of FOIA is disclosure, and exemptions are to be narrowly construed. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Indeed, the Act puts no restrictions on the quantity of records that may be sought. In fact, the statute anticipates requests for voluminous records: When an agency is asked to "search for, collect, and appropriately examine a voluminous amount of separate and distinct records" it may have extra time to comply. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Notably, the term "exceptional

14

circumstances" generally does not include a delay that results from a predictable agency workload of requests under this section. *Id.* at § 552(a)(6)(C). Thus, FOIA anticipates that requests for records may be so voluminous as to require an agency to carry an unusual workload. This Circuit has similarly noted that the number of records requested appears to be irrelevant. *See Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (rejecting the argument that a request for all the records within a particular computer system is overbroad); *see also* FOIA Update Vol. IV, No. 3, at 5 ("The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A)").

However, even assuming the size of a FOIA request could provide grounds for denial, the burden of demonstrating overbreadth is substantial. When the reasonableness of search and production is questioned, the agency has the burden to produce a sufficient explanation as to why it would be unreasonably burdensome. *Cf. Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (instructing the district court on remand to order an agency to search files likely to contain responsive information "if it cannot provide sufficient explanation as to why such a search would be unreasonably burdensome"); *Public Citizen, Inc. v. Dep't of Educ.* 292 F. Supp. 2d 1, 6-7 (D.D.C. 2003) (rejecting defendants' claim "[w]ithout more specification as to why a search certain to turn up responsive documents would be unduly burdensome must be rejected," despite its argument that the request would require the transport and manual search of 25,000 individual files).

"Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by [other] evidence in the record." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir.

1984). *See, e.g.*, *Goland*, 607 F.2d at 352-53 (finding sufficiently detailed an affidavit noting the request would require a "page-by-page search through the 84,000 cubic feet of documents"); *Int'l Counsel Bureau v. U.S. Dep't of Defense*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010) (granting defendants summary judgment based on declaration that collecting and redacting requested files would require assistance of a full-time staff of twelve for a full year).

On the record before the Court, the BOP has not proven that Mr. Tereshchuk's production request was overly burdensome. The BOP makes much of the fact that the request implicates 214,456 responses stored in hardcopy in various facilities that would have to be redacted before production. Mot. Summ. J. 9. However, the BOP has not shown the extent to which this would burden the agency and whether such a burden is unusual. FOIA requests are frequently time-consuming and indeed it is not unusual for a search pursuant to FOIA to last over a year. *Int'l Counsel Bureau v. U.S. Dep't of Def.*, 723 F. Supp. 2d 54, 60 (D.D.C. 2010). Although there are many responses, it appears that they are already compiled (albeit in different locations) and consist of approximately 24,840 pages. Stroble Decl. ¶ 6. The severity of the burden is thus unclear.

Because the BOP has conceded the issue and a request for "all" responses would not be unduly burdensome, if Mr. Tereshchuk does request the ARP responses and identify them by index number, the BOP must produce them.

## C. Reading Room Records

Finally, Mr. Tereshchuk argues that ARP records are reading room records that must be available to the public without the need for FOIA requests. Opp'n 1, 6-7. FOIA requires certain agency determinations not merely to be provided upon written request, but to be made available continuously in the agency's reading room. 5 U.S.C. § 552(a)(2); *Church of Scientology of Cal.*

*v. IRS*, 792 F.2d 153, 159 (D.C. Cir. 1986) aff'd, 484 U.S. 9 (1987); *Jordan v. DOJ*, 591 F.2d 753, 756 (D.C. Cir. 1978) (en banc) (observing that subsection (a)(2) records must be made "automatically available for public inspection; no demand is necessary"). Such reading room records include "final opinions . . . made in the adjudication of cases" and "statements of policy and interpretations which have been adopted by the agency." 5 U.S.C. § 552(a)(2). The requirement "represents a strong congressional aversion to 'secret law,' and represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 153 (1975).[2]

In determining whether Section 552(a)(2) applies, this Circuit considers whether the decision at issue constitutes a "final, unappealable decision not to pursue a judicial remedy in an adversarial dispute." *Common Cause v. IRS*, 646 F.2d 656, 659-60 (D.C. Cir. 1981). It also looks to whether the records at issue have "precedential significance." *Smith v. Nat'l Transp. Safety Bd.*, 981 F.2d 1326, 1328 (D.C. Cir. 1993). Records that have no precedential value and do not constitute working law of the agency are not required to be made available under this part of the Act. *See Sears*, 421 U.S. at 153-54; *Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164 (D.C. Cir. 1989) (under Section 552(a)(2), opinions at issue must "operate as law").

The BOP has introduced the affidavit of Thomas L. Albright, Executive Assistant of the Federal Bureau of Prisons, to show that ARP responses are non-adversarial, non-precedential decisions on every-day prisoner requests and grievances. Albright Decl. ¶ 4 ("The Administrative Remedy Program is not adversarial . . . BOP's responses are not used as

---

[2] Plaintiff explicitly mentions reading room records for the first time in his opposition to defendant's motion for summary judgment. As such, defendant argues that plaintiff should be required to seek leave of the Court to amend the Complaint in order to advance this argument pursuant to Fed. R. Civ. P. 15(a)(2). However, his complaint does mention his concern with BOP's body of "secret law" and argues that he is being "deprived of [] administrative caselaw." Compl. ¶¶ 26-31. His Supplemental Complaint also argues that the responses are final opinions in the adjudication of cases. Supp. Compl. ¶ 21. Again noting that complaints of pro se parties are to be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court declines to dismiss this claim on that basis alone.

17

precedent and are only applied to the individual prisoner's formal administrative remedy submission."). As noted, the Court may award summary judgment solely on the information provided in an agency's affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)). Because the responses deal with highly individualized cases, it is logical and plausible that these decisions do not have precedential effect, but rather are tools for the daily management of prisons.

Importantly, the evidence the BOP presents is not controverted by any contrary evidence or evidence of the agency's bad faith. Although Mr. Tereshchuk argues that Exhibit A shows the responses are "adversarial," Opp'n 3, that is not clear from the evidence and does nothing to show that such responses have precedential significance. Mr. Tereshchuk presents no evidence that the agency in fact relies on these responses, intends them to become agency policy, or indeed ever looks at them again after their issuance.

Additionally, ordinary prison-management records are not the sort of "adjudications" anticipated by Section (a)(2). Courts have considered proceedings "adjudications" where agencies decided not to institute judicial proceedings or actually adjudicated a case. *Abtew v. U.S. Dep't of Homeland Sec.*, 13cv-1566, 2014 WL 2620982 at *6 (D.D.C. June 13, 2014) (citing cases). Here, inmates are not actually attempting to file cases; rather, they are filing administrative complaints relating to day-to-day prison management. If an inmate believes that

his legal or constitutional rights were violated, he may bring suit elsewhere after his administrative appeals are exhausted. *See id.* (finding no "adjudication" under (a)(2) when plaintiff's asylum application was investigated and denied, because the matter could be appealed to immigration court).

Because there is no evidence that the administrative responses constitute the working law of the BOP and they are not "adjudications" within Section (a)(2), this Court grants the BOP's motion for summary judgment on the issue of reading room records.

## IV.    CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment will be GRANTED. This case will be DISMISSED.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on September 16, 2014.